**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MICHELLE MARIHUGH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSURANCEAMERICA MANAGING GENERAL AGENCY, LLC,<br><br>Defendant. | Case No. ________________<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Michelle Marihugh ("Plaintiff"), individually and on behalf of all others similarly situated, brings a class action complaint against Defendant AssuranceAmerica Managing General Agency, LLC ("Defendant" or "AssuranceAmerica") and allege, upon personal knowledge as to their own actions and counsel's investigations, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1. Plaintiff brings this class action against AssuranceAmerica for its failure to properly secure and safeguard sensitive information (collectively, the "Class Members") that AssuranceAmerica's customers entrusted to it, including,

without limitation, individuals' names, addresses, Social Security number, tax identification number, driver's license number, automobile insurance policy or insurance account information, claims-related information, vehicle identification number, and contract information (collectively, "personally identifiable information" or "PII").

2. AssuranceAmerica, based in Atlanta, Georgia, provides auto, renters, and commercial auto insurance throughout Alabama, Arizona, Florida, Georgia, Indiana, Nebraska, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia.

3. Between March 16, 2026 and March 17, 2026, AssuranceAmerica experienced a data breach, during which cybercriminals accessed or acquired the above-referenced PII (the "Data Breach").

4. Prior to and through March 16, 2026, AssuranceAmerica obtained Plaintiff's and Class Members' PII, and stored that PII in an Internet-accessible environment on AssuranceAmerica's network.

5. By obtaining, collecting, using, and deriving a benefit from the Plaintiff's and Class Members' PII, AssuranceAmerica assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

6. The exposed PII of Plaintiff and Class Members can be sold on the dark web. Hackers can access and then offer unencrypted, unredacted PII for sale to criminals. Plaintiff and Class Members now face a life-long risk of (i) identity theft and (ii) the sharing and detrimental use of their sensitive information.

7. The PII was compromised due to AssuranceAmerica's negligent and/or careless acts and omissions and its failure to protect Plaintiff's and Class Members' PII. In addition to AssuranceAmerica's failure to prevent the Data Breach, AssuranceAmerica has not disclosed any details regarding the Data Breach to Plaintiff and Class Members. AssuranceAmerica has also purposefully withheld the specific vulnerabilities and root causes of the Data Breach and has not disclosed that information to Plaintiff and Class Members.

8. As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

9. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of AssuranceAmerica's failure to: (i) adequately protect Plaintiff's and Class Members' PII; (ii) warn Plaintiff and Class Members of AssuranceAmerica's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security

procedures. AssuranceAmerica's conduct amounts to negligence and violates federal and state statutes.

10. Plaintiff and Class Members have suffered injury as a result of AssuranceAmerica's conduct. These injuries include:

a. lost or diminished value of their PII;

b. out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

c. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time;

d. the disclosure of their private information;

e. time needed to investigate, correct, and resolve unauthorized access to their accounts, as well as time needed to deal with spam messages and emails received subsequent to the Data Breach;

f. charges and fees associated with fraudulent charges on their accounts; and

g. the continued and increased risk to their PII, which: (i) remains unencrypted and available for unauthorized third parties to access and abuse; and (ii) may remain backed up in AssuranceAmerica's possession and is

subject to further unauthorized disclosures so long as AssuranceAmerica fails to undertake appropriate and adequate measures to protect that PII.

11. AssuranceAmerica disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, Plaintiff's and Class Members' PII was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## **PARTIES**

12. Plaintiff Michelle Marihugh is a citizen of South Carolina, residing in Moncks Corner, South Carolina.

13. Defendant AssuranceAmerica Managing General Agency, LLC is a Delaware corporation with its principal place of business in Atlanta, Georgia.

14. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek

leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

15. All of Plaintiff's claims stated herein are asserted against AssuranceAmerica and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Minimal diversity exists because Plaintiff and putative Class Members reside outside the State of Georgia. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

17. This Court has general personal jurisdiction over AssuranceAmerica because it maintains its principal place of business in Georgia. *See* 28 U.S.C. 1391(a).

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because AssuranceAmerica resides in this District, a substantial part of the events giving rise to this action occurred in this District, and AssuranceAmerica is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### *Defendant's Business and Data Collection*

19. AssuranceAmerica provides auto, renters, and commercial auto insurance across 14 states through its network of 9,500+ agents.[1] Its policies are offered in Alabama, Arizona, Florida, Georgia, Indiana, Nebraska, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia. [2]

20. In the ordinary course of business and as a condition of providing an insurance policy, AssuranceAmerica requires its customers to provide it with a significant volume of sensitive personal, financial, and private information, such as the PII compromised in the Data Breach.

21. The Privacy Policy on the AssuranceAmerica website outlines the scenarios in which PII may be collected and disclosed."[3]

22. The Privacy Policy provides additional includes a long list of the types of entities with whom FIS and its subsidiaries may share personal data. None of those entities include the hackers responsible for the Data Breach.[4]

---

[1] "AssuranceAmerica Group – About Us," https://www.assuranceamerica.com/group-about-us (last accessed June 25, 2026).

[2] *Id.*

[3] "Privacy Policy," https://www.assuranceamerica.com/Privacy (last accessed June 25, 2026).

[4] *Id.*

23. Furthermore, the Privacy Policy states that AssuranceAmerica "maintain[s] administrative, technical, and physical safeguards designed to protect personal information from unauthorized access, disclosure, alteration, or misuse."[5]

24. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, AssuranceAmerica assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure.

25. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII.

26. Plaintiff and Class Members relied on AssuranceAmerica to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

27. AssuranceAmerica collected Plaintiff's and Class Members' PII and stored it, unencrypted, on AssuranceAmerica's internet-accessible network.

28. AssuranceAmerica had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

***The Data Breach***

29. On or around March 17, 2026, AssuranceAmerica detected suspicious activity on its systems.

[5] *Id.*

30. Upon investigation, AssuranceAmerica determined that on March 16, 2026, an unauthorized third-party gained access to an AssuranceAmerica employee's account and obtained files stored on AssuranceAmerica's network.

31. Despite detecting the suspicious activity on March 17, 2026, AssuranceAmerica waited more than three months to notify state regulators or affected individuals.

32. AssuranceAmerica provided such notice to the North Carolina Department of Consumer Affairs as well as Plaintiff and Class Members on June 18, 2026.

33. AssuranceAmerica has not issued any additional information regarding how the Data Breach occurred or the additional security measures implemented.

34. Despite its representations in its Privacy Policy, AssuranceAmerica did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' PII.

35. Because AssuranceAmerica had a duty to protect Plaintiff's and Class Members' PII, AssuranceAmerica should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

36. Plaintiff's and Class Members' unencrypted PII may now appear on the dark web or simply fall into the hands of companies that will use the information for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals have or can easily access and view Plaintiff's and Class Members' PII.

***AssuranceAmerica Stores Plaintiff's and Class Members' PII***

37. AssuranceAmerica obtained and stored a massive amount of PII. As a condition of using its clients' services, those clients required their customers to entrust AssuranceAmerica with highly confidential PII.

38. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, AssuranceAmerica assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

39. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on AssuranceAmerica to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

***PII is Valuable and Subject to Unauthorized Disclosure***

40. AssuranceAmerica was aware that the PII it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

41. PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft and financial fraud.[6] Indeed, a robust illegal market exists in which criminals openly post stolen PII on multiple underground websites, commonly referred to as the "dark web." Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner" in case a scammer's "bona fides" are challenged when they attempt to use the credit card, are also offered on the dark web.[7]

42. The ramifications of AssuranceAmerica's failure to keep Plaintiff's and Class Members' PII secure are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

43. Further, criminals often trade stolen PII for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

---

[6] Federal Trade Commission Consumer Advice, *What To Know About Identity Theft*,https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited May 8, 2026).

[7] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited May 8, 2026).

44. AssuranceAmerica knew, or should have known, the importance of safeguarding PII entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. AssuranceAmerica failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

***The Data Breach Exposed Plaintiff and Class Members to Identity Theft and Out-of-Pocket Losses***

45. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

46. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII, AssuranceAmerica's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII were reckless, or at the very least, negligent.

47. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of AssuranceAmerica's misfeasance.

48. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[8]

49. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. invasion of privacy;

b. theft of their PII;

c. lost or diminished value of their PII;

d. lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

e. loss of the benefit of their bargain;

f. time needed to investigate, correct, and resolve unauthorized access to their accounts, as well as time needed to deal with spam messages and emails received subsequent to the Data Breach;

g. Charges and fees associated with fraudulent charges on their accounts;

---

[8] 2025 LexisNexis True Cost of Fraud Study, https://risk.lexisnexis.com/insights-resources/research/us-ca-true-cost-of-fraud-study (last visited May 8, 2026).

h. statutory damages;

i. nominal damages; and

j. the continued and certainly increased risk to their PII, which: (i) remains unencrypted and available for unauthorized third parties to access and abuse; and (ii) remains backed up in AssuranceAmerica's possession and is subject to further unauthorized disclosures so long as AssuranceAmerica fails to undertake appropriate and adequate measures to protect the PII.

***AssuranceAmerica Violated FTC Guidelines***

50. The Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, prohibited AssuranceAmerica from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTCA. *See, e.g.*, *Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

51. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to

the FTC, the need for data security should be factored into all business decision-making.[9]

52. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[10] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

53. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[11]

54. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to

---

[9] Federal Trade Commission, *Start With Security: A Guide for Business*, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 8, 2026).

[10] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited May 8, 2026).

[11] Federal Trade Commission, *Start With Security*, *supra* note 13.

employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

55. AssuranceAmerica failed to properly implement basic data security practices. AssuranceAmerica's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Plaintiff Marihugh's Experience***

56. Plaintiff Michelle Marihugh was the privacy policy holder for a full coverage auto policy issued by AssuranceAmerica from approximately April 2024 to January 2026.

57. AssuranceAmerica obtained Ms. Marihugh's PII in the course of conducting its regular business operations. At the time of the Data Breach, AssuranceAmerica retained Ms. Marihugh's PII.

58. Ms. Marihugh greatly values her privacy and is very careful about sharing her sensitive PII. Ms. Marihugh diligently protects her PII, takes proactive steps to ensure that her PII is kept safe and secure, and stores any documents containing her PII in a safe and secure location. Ms. Marihugh has never

knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

59. AssuranceAmerica obtained and continues to maintain Ms. Marihugh's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

60. The Data Breach has caused Ms. Marihugh to suffer substantial injury, as well as imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

61. As a result of the Data Breach, Ms. Marihugh is at present risk and will continue to be at increased risk of additional identity theft and fraud for years to come.

62. Since the Data Breach, Ms. Marihugh has received numerous unsolicited calls from unknown individuals who are seemingly in possession of her personal information. She has also received unsolicited emails regarding car and life insurance policies that she has not received prior to the Data Breach.

63. Ms. Marihugh has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in AssuranceAmerica's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

64. This civil action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4). Plaintiff seek certification of the following class:

> All persons in the United States and its territories whose PII was compromised in the Data Breach.

65. Excluded from the Class are AssuranceAmerica, any entity in which AssuranceAmerica has a controlling interest, and AssuranceAmerica's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officers presiding over this matter, members of their immediate family, and members of their judicial staff.

66. Plaintiff reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

67. **Numerosity**: The Class Members are so numerous that individual joinder of all Class Members is impracticable. Over 611,046 individuals' PII was exposed by AssuranceAmerica. All Class Members' names and addresses are available from AssuranceAmerica's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

68. **Commonality**: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent AssuranceAmerica had a duty to protect Plaintiff's and Class Members' PII;

b. Whether AssuranceAmerica was negligent in collecting and storing Plaintiff's and Class Members' PII;

c. Whether AssuranceAmerica had duties not to disclose Plaintiff's and Class Members' PII to unauthorized third parties;

d. Whether AssuranceAmerica took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e. Whether AssuranceAmerica failed to adequately safeguard Plaintiff's and Class Members' PII;

f. Whether AssuranceAmerica failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

g. Whether AssuranceAmerica adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

h. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of AssuranceAmerica's wrongful conduct;

i. Whether Plaintiff and Class Members are entitled to restitution because of AssuranceAmerica's wrongful conduct;

j. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

69. **Typicality**: Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was disclosed by AssuranceAmerica. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through AssuranceAmerica's common misconduct. Plaintiff are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

70. **Adequacy**: Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against

AssuranceAmerica to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

71. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because AssuranceAmerica has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. AssuranceAmerica's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on AssuranceAmerica's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

72. **Superiority**: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that tens of thousands of

individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like AssuranceAmerica. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

73. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because AssuranceAmerica would necessarily gain an unconscionable advantage in non-class litigation, since AssuranceAmerica would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

74. The litigation of Plaintiff's claims is manageable. AssuranceAmerica's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

75. Adequate notice can be given to Class Members directly using information maintained in AssuranceAmerica's records.

76. Unless a class-wide injunction is issued, AssuranceAmerica may continue to maintain inadequate security with respect to Plaintiff's and Class Members' PII, AssuranceAmerica may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and AssuranceAmerica may continue to act unlawfully as set forth in this Complaint.

77. AssuranceAmerica has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**COUNT I**
**NEGLIGENCE**
**(on behalf of Plaintiff and the Class)**

78. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

79. AssuranceAmerica knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII.

80. Upon accepting and storing Plaintiff's and Class Members' PII on its computer systems and networks, AssuranceAmerica undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Plaintiff's and Class Members' PII from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

81. AssuranceAmerica owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the PII.

82. AssuranceAmerica's duty also included the responsibility to implement processes by which it could detect and analyze a breach of its security systems in a reasonably expeditious period of time and give prompt notice to those affected in the event of a cyberattack.

83. AssuranceAmerica knew or should have known of the risks inherent in collecting the PII of Plaintiff and Class Members and the importance of adequate security. AssuranceAmerica was on notice because, on information and

belief, it knew or should have known that it would be an attractive target for cyberattacks.

84. AssuranceAmerica owed a duty of care to Plaintiff and Class Members whose PII was entrusted to it. AssuranceAmerica's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting PII in its possession;

b. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing its networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class Members' PII was adequately secured from impermissible release, disclosure, and publication;

c. To protect Plaintiff's and Class Members' PII using reasonable and adequate security procedures and systems compliant with industry standards;

d. To have procedures in place to prevent the loss or unauthorized dissemination of PII in its possession;

e. To employ reasonable security measures and otherwise protect the PII of Plaintiff and Class Members pursuant to the FTCA;

f. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

g. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

85. AssuranceAmerica's duty to employ reasonable data security measures arose, in part, under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

86. AssuranceAmerica's duty also arose because AssuranceAmerica was bound by industry standards to protect Plaintiff's and Class Members' confidential PII.

87. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of AssuranceAmerica, and AssuranceAmerica owed them a duty of care to not subject them to an unreasonable risk of harm.

88. AssuranceAmerica, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within AssuranceAmerica's possession.

89. AssuranceAmerica, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members.

90. AssuranceAmerica, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose PII was compromised.

91. AssuranceAmerica breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by AssuranceAmerica include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Failing to implement and maintain adequate mitigation policies and procedures;

e. Allowing unauthorized access to Class Members' PII;

f. Failing to comply with the FTCA; and

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

92. AssuranceAmerica acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the PII compromised in the Data Breach.

93. AssuranceAmerica's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised, exfiltrated, and misused, as alleged herein.

94. As a result of AssuranceAmerica's ongoing failure to notify Plaintiff and Class Members regarding exactly what PII has been compromised, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

95. AssuranceAmerica's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their PII, and/or loss of time and money to monitor their accounts for fraud.

96. As a result of AssuranceAmerica's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes.

97. AssuranceAmerica also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' PII and promptly notify them about the Data Breach.

98. As a direct and proximate result of AssuranceAmerica's conduct, including, but not limited to, AssuranceAmerica's failure to implement and maintain reasonable data security practices and procedures, Plaintiff and Class Members have suffered or will suffer injury and damages, including, but not limited to: (i) the loss of the opportunity to determine for themselves how their PII is used; (ii) the publication and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their PII, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost time and opportunity costs associated with efforts expended to address and mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from fraud and identity theft; (v) costs associated with placing freezes on credit

reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PII, which remains in AssuranceAmerica's possession and is subject to further unauthorized disclosures so long as AssuranceAmerica fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised PII for the rest of their lives. Thus, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

99. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

100. Plaintiff and Class Members have suffered cognizable injuries and are entitled to actual and punitive damages in an amount to be proven at trial.

101. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring AssuranceAmerica to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

103. Pursuant to Section 5 of the FTCA, AssuranceAmerica had a duty to provide fair and adequate computer systems and data security to safeguard the PII of Plaintiff and Class Members.

104. Plaintiff and Class Members are within the class of persons that the FTCA intended to protect, and AssuranceAmerica's failure to comply with both constitutes negligence *per se*.

105. AssuranceAmerica breached its duties to Plaintiff and Class Members under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII, and by failing to provide prompt notice of the Data Breach without unreasonable delay.

106. Specifically, AssuranceAmerica breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

107. The FTCA prohibits “unfair . . . practices in or affecting commerce,” including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the PII compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of AssuranceAmerica’s duty in this regard.

108. AssuranceAmerica also violated the FTCA by failing to use reasonable measures to protect the PII of Plaintiff and Class Members, and by not complying with applicable industry standards, as described herein.

109. AssuranceAmerica’s violations of the FTCA constitute negligence *per se*.

110. It was reasonably foreseeable, particularly given the growing number of data breaches of PII, that the failure to reasonably protect and secure Plaintiff’s and Class Members’ PII in compliance with applicable laws would result in an unauthorized third-party gaining access to AssuranceAmerica’s networks, databases, and computers that stored Plaintiff’s and Class Members’ unencrypted PII.

111. Plaintiff’s and Class Members’ PII constitutes personal property that was stolen due to AssuranceAmerica’s negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

112. As a direct and proximate result of AssuranceAmerica's negligence *per se*, Plaintiff and Class Members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their PII, including but not limited to damages from the actual misuse of their PII and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

113. As a direct and proximate result of AssuranceAmerica's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

114. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring AssuranceAmerica to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT III
## UNJUST ENRICHMENT
## (On Behalf of Plaintiff and the Class)

115. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

116. Plaintiff and Class Members conferred a monetary benefit on AssuranceAmerica by purchasing services and/or labor from AssuranceAmerica, along with their PII. In exchange, Plaintiff and Class Members expected that

AssuranceAmerica would implement and maintain adequate and industry-standard data security protections for their sensitive PII.

117. AssuranceAmerica has retained the benefits of its unlawful conduct by calculating to increase its own profit at the expense of adequate and necessary cybersecurity for Plaintiff's and Class Members' sensitive PII.

118. AssuranceAmerica knew that Plaintiff and Class Members conferred a benefit upon it in the form of payments for its services and/or labor, which AssuranceAmerica accepted. AssuranceAmerica profited from these transactions and used the PII of Plaintiff and Class Members for business purposes, while failing to fund adequate data security measures that would have secured Plaintiff's and Class Members' PII and prevented the Data Breach.

119. If Plaintiff and Class Members had known that AssuranceAmerica had not adequately secured their PII, they would not have agreed to provide such PII to AssuranceAmerica's customers.

120. Due to AssuranceAmerica's conduct alleged herein, it would be unjust and inequitable under the circumstances for AssuranceAmerica to be permitted to retain the benefit of its wrongful conduct.

121. AssuranceAmerica enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

122. Instead of providing a reasonable level of security that would have prevented the Data Breach, AssuranceAmerica instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of AssuranceAmerica's decision to prioritize its own profits over the requisite data security.

123. As a direct and proximate result of AssuranceAmerica's conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remains in AssuranceAmerica's possession and is subject to further unauthorized disclosures so long as AssuranceAmerica fails to undertake appropriate and adequate measures to protect PII in its continued possession; and (vii) future costs in terms of time,

effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

124. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from AssuranceAmerica and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by AssuranceAmerica from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

125. Plaintiff and Class Members may not have an adequate remedy at law against AssuranceAmerica, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT IV**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiff and the Class)**

126. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

127. Plaintiff and Class Members took reasonable and appropriate steps to keep their PII confidential from the public.

128. Plaintiff and Class Members had a legitimate expectation of privacy with respect to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

129. AssuranceAmerica owed a duty to individuals, including Plaintiff and Class Members, to keep their PII confidential.

130. The unauthorized release of PII is highly offensive to any reasonable person.

131. Plaintiff's and Class Members' PII is not of legitimate concern to the public.

132. AssuranceAmerica knew or should have known that Plaintiff's and Class Members' PII was private.

133. AssuranceAmerica publicized Plaintiff's and Class Members' PII, by communicating it to cybercriminals who had no legitimate interest in this PII and who had the express purpose of monetizing that information by injecting it into the illicit stream of commerce flowing through the dark web and other malicious channels of communication.

134. It is therefore substantially certain that Plaintiff's and the Class Members' PII is rapidly becoming public knowledge—among the community writ large—due to the nature of the malware attack that procured it, and the identity theft for which it is designed.

135. Moreover, because of the ubiquitous nature of data breaches, AssuranceAmerica was substantially certain that a failure to protect PII would lead

to its disclosure to unauthorized third parties, including thousands of waiting identity thieves.

136. Therefore, by failing to keep Plaintiff's and Class Members' PII safe, and by misusing and/or disclosing their PII to unauthorized parties for unauthorized use, AssuranceAmerica invaded Plaintiff's and Class Members' privacy by:

a. Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

b. Publicizing private facts about Plaintiff and Class Members, which is highly offensive to a reasonable person.

137. Unless and until enjoined, and restrained by order of this Court, AssuranceAmerica's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members in that AssuranceAmerica's inadequate data security measures will likely result in additional data breaches. Plaintiff and Class Members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further invasions of Plaintiff's and Class Members' privacy by AssuranceAmerica.

## COUNT V
## DECLARATORY AND INJUNCTIVE RELIEF, 28 U.S.C. § 2201
## (On Behalf of Plaintiff and the Class)

138. Plaintiff restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

139. This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

140. As previously alleged, AssuranceAmerica was required to provide adequate security for the protection of the PII AssuranceAmerica collected.

141. AssuranceAmerica owes a duty of care to Plaintiff and Class Members that required it to adequately secure their PII.

142. AssuranceAmerica still possesses Plaintiff's and Class Members' PII, yet does not adequately protect their PII against the threat of another data breach.

143. AssuranceAmerica has not satisfied its contractual obligations and legal duties to Plaintiff and Class Members.

144. Actual harm has arisen in the wake of the Data Breach regarding AssuranceAmerica's obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII and AssuranceAmerica's ongoing failure to address the security failings that led to such exposure.

145. Since the Data Breach, AssuranceAmerica has not announced any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

146. There is no reason to believe that AssuranceAmerica's employee training and security measures are any more adequate now than they were before the Data Breach.

147. Plaintiff and the Class Members, therefore, seek a declaration (1) that AssuranceAmerica's existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its obligations and duties of care, AssuranceAmerica must implement and maintain reasonable security measures, including, but not limited to, being ordered as follows:

a. prohibiting AssuranceAmerica from engaging in the wrongful and unlawful acts described herein;

b. ordering that AssuranceAmerica engage internal security personnel to conduct testing, including audits on AssuranceAmerica's systems, on a periodic basis, and ordering AssuranceAmerica to promptly correct any problems or issues detected by such third-party security auditors;

c. requiring AssuranceAmerica to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

d. ordering that AssuranceAmerica engage third-party security auditors and internal personnel to run automated security monitoring;

e. ordering that AssuranceAmerica audit, test, and train security personnel and employees regarding any new or modified data security policies and procedures;

f. ordering that AssuranceAmerica purge, delete, and destroy, in a reasonably secure manner, any PII not necessary for provision of services;

g. ordering that AssuranceAmerica conduct regular database scanning and security checks;

h. prohibiting AssuranceAmerica from maintaining PII of Plaintiff and Class Members on a cloud-based database;

i. requiring AssuranceAmerica to segment data by, among other things, creating firewalls and access controls so that if one area of AssuranceAmerica's network is compromised, hackers cannot gain access to other portions of AssuranceAmerica's systems;

j. ordering that AssuranceAmerica routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive PII;

k. requiring AssuranceAmerica to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding paragraphs, as well as randomly and periodically testing employees' compliance with AssuranceAmerica's policies, programs, and systems for protecting personal identifying information;

l. requiring AssuranceAmerica to meaningfully educate all Class Members about the threats they face as a result of the loss of their PII to third parties, as well as the steps affected individuals must take to protect themselves;

m. requiring AssuranceAmerica to implement logging and monitoring programs sufficient to track traffic to and from AssuranceAmerica's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate AssuranceAmerica's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment; and

n. such other and further relief as this Court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiff and their counsel to represent the Class;

b. for equitable relief enjoining AssuranceAmerica from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c. for equitable relief compelling AssuranceAmerica to use appropriate cybersecurity methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class Members the types of PII compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorney fees, costs, and litigation expenses, as allowed by law;

f. for pre-judgment and post-judgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 26, 2026

Respectfully submitted,

**BAILEY & GLASSER LLP**

D. Todd Mathews

______________________________

D. Todd Mathews
210 W. Division Street
Maryville IL 62062
Phone: (618) 418-5180
tmathews@baileyglasser.com

**BAILEY GLASSER LLP**
Bart D. Cohen (*pro hac vice* forthcoming)
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (*pro hac vice* forthcoming))
david@tomorrowlaw.com
Younjin (Jennifer) Lee (*pro hac vice* forthcoming)
jlee@tomorrowlaw.com
1460 Westwood Blvd
Los Angeles, California 90024
(310) 438-5555

*Attorneys for Plaintiff and the Proposed Class*